FILED

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

97 JUN 11 AM 9: 34
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **DAVID L. JOHNSON,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-96-N-0468-S |
| **WAL-MART STORES, INC.,** | ] |
| Defendant(s). | ] |

ENTERED
JUN 11 1997

**Memorandum of Opinion**

**I.    Introduction.**

In this employment discrimination action, the plaintiff, David L. Johnson ("Johnson"), brings claims against the defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), originally pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. § 1983 ("Section 1983"). In an order entered on February 28, 1996, the court dismissed the Section 1983 claim because the plaintiff had made no allegation that any conduct of Wal-Mart was done "under color of state law." Specifically the plaintiff contends that Wal-Mart discriminated against him on the basis of race when it terminated his employment. *Complaint* at 2-5 (unnumbered pages).

This matter is presently before the court on the defendant's motion for summary judgment, filed on May 21, 1997. The motion has been fully briefed and, upon due consideration, will be granted and the claims dismissed.

## II.   **Statement of Facts.**[1]

The plaintiff was hired in 1986 to work at the Wal-Mart store located in Fairfield, Alabama. District manager Susan Farr terminated his employment on April 4, 1995, for sexually harassing a coworker, Becky Herbstreith ("Herbstreith"). At the time of the plaintiff's termination, he was assigned to the night receiving crew, as was Herbstreith. Herbstreith reported to store management that Johnson, Terrance Evans ("Evans"), and Walter Gooden ("Gooden"), all black males, had sexually harassed her on February 24, 1995, and for three and one-half months prior to that time. Evans and Gooden also worked on the night receiving crew. Herbstreith reported that on February 24, 1995, Johnson wanted her to go with him to a nightclub so that he could teach her how to dance. She stated that Johnson said he would take her out if she wore bright red lipstick and that he would have sexual intercourse with her all night if the lights were off. She further reported that Evans talked about having anal intercourse and that, after Evans made that statement, Johnson said that Herbstreith only worked in receiving so that she could be close to Gooden.

James Newhouse ("Newhouse") and Bill Capps ("Capps") confirmed that the plaintiff, Evans, and Gooden made comments of a sexual nature to Herbstreith. Capps reported that he heard Johnson repeatedly ask Herbstreith to go out with him and that he said, "I will f___ you if I can keep the lights off and if you wear red lipstick." Capps further

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

2

declared that Johnson repeatedly harassed Herbstreith for a couple of hours. Newhouse and Capps both reported that, during the same time period, Evans talked about animal, oral, and anal intercourse. Newhouse also stated that Gooden informed Herbstreith that he could do things to her that she would never forget and that all three men described Herbstreith as "their woman."

Johnson claims that one week prior to his discharge, Robert Beasley, a store assistant manager, informed Johnson that Herbstreith had complained of sexual harassment and that Beasley asked the plaintiff whether he, Evans, and Gooden had said anything to Herbstreith. At 5:00 a.m. or 6:00 a.m. on the morning of the plaintiff's discharge, an assistant manager named Zane purportedly approached Johnson, Evans, and Gooden and informed them that Herbstreith had accused them of sexual harassment. Zane asked them to write a statement indicating whether they had acted in the accused manner and informed them that sexually harassing conduct was grounds for termination. Johnson refused to write such a statement.

At approximately 9:00 a.m. or 10:00 a.m. on that same morning, the store personnel manager called the plaintiff to the store office. District manager Susan Farr and store manager Wyley Brown were in the office. Farr informed the plaintiff that Herbstreith had accused him of sexual harassment and relayed the statements Herbstreith claimed the plaintiff made to her. Farr asked Johnson if he had made the statements, and Johnson claims he informed Farr that he had not had any conversation on the topic of sex with the complainant. Farr then terminated the plaintiff's employment for violating company policy prohibiting sexually harassing conduct. Farr only questioned Johnson about the matter on

3

the date that his employment was terminated and not before. Gooden and Evans were also discharged on that day. Johnson testified at deposition that he never discussed sex around Herbstreith and only asked her if she wanted to go to the nightclub with a group of people. He also testified that to his recollection, Gooden and Evans never discussed sex in Herbstreith's presence either. *Plaintiff's Deposition* at 36-38. The plaintiff, Gooden, and Evans were each replaced by a black male.

Wal-Mart has a policy prohibiting sexual harassment. The policy is published in the employee handbook. The handbook also maintains that certain actions of misconduct, such as harassment, may result in immediate termination.

Approximately three weeks after the plaintiff was discharged, Shantae Nelson ("Nelson"), a black female employee, complained that Kenneth Haynes ("Haynes"), a white male employee, was spending an excessive amount of time around her, had bumped into her buttocks, and asked her if anyone had told her she had a "bubble butt."[2] The district loss prevention supervisor and Nelson's supervisor, Richard Robinson ("Robinson"), investigated Nelson's claim. He interviewed Nelson regarding her complaint, asking her whether she perceived Haynes' conduct as threatening or harassing. She informed Robinson that she had not perceived the conduct in such a manner; rather, she considered Haynes' conduct to be bothersome.[3] Robinson informed Nelson he would speak to Haynes

---

[2] Nelson never expressly charged Haynes with sexual harassment.

[3] The plaintiff disputes this fact, citing Plaintiff's Exhibit B as support for his dispute. Exhibit B is a copy of Nelson's written complaint, dated April 21, 1995. In that statement, she describes Haynes' conduct. She does not address, however, Robinson's investigation of the matter or their ensuing discussions. Therefore, the court will accept the defendant's fact as true for purposes of the motion for summary judgment.

about the issue. Robinson asked Haynes about the complaint, and Haynes denied all of the allegations. Robinson then interviewed witnesses and learned that Nelson and Haynes had joked with each other in the past about being boyfriend and girlfriend.[4] He also learned that Nelson commented to a police officer at the front of the store, "Kenny is my man. I am going to marry him and make red-headed black babies" and remarked about Haynes' "fine rear." Robinson found no witness to corroborate Nelson's claim and, based upon his investigation, concluded there was no evidence that Haynes had sexually harassed Nelson. Wal-Mart thus took no disciplinary action against Haynes. Haynes, however, subsequently requested to be transferred to another Wal-Mart store location.[5]

The plaintiff contends he was terminated on the basis of race because Haynes, a white male, was accused of sexual harassment but was not discharged. The plaintiff never spoke with Haynes about the accusation, however, and Nelson told him only that "she was through with it, and she didn't want to talk about it." *Plaintiff's Deposition* at 28. Johnson learned of Nelson's allegations from Janice Lewis, a coworker, three days after he was terminated. He does not know which member of management received Nelson's complaint or who handled the incident. He never witnessed Haynes acting in a sexually harassing manner and knows nothing of the incident other than that which he learned from Janice Lewis. Johnson testified in deposition that he knows of no other Wal-Mart employees who

---

[4] The plaintiff disputes this fact, citing Plaintiff's Exhibit C as support for his dispute. Exhibit C is a copy of Robinson's declaration. The defendant cites the same evidence as support for the proposed fact. The evidence, however, supports the statement with the exception of the defendant's characterization of the joking as "frequent."

[5] Again, the plaintiff disputes these facts, citing either Nelson's written complaint or Robinson's declaration as support for the dispute or citing no evidence at all. As discussed in notes 3 and 4, *supra*, however, the evidence cited either does not refute the defendant's statements of fact or confirms them.

have been terminated for sexual harassment other than him, Gooden, and Evans. *Plaintiff's Deposition* at 69. Robinson did not participate in the investigation of the complaint against the plaintiff and played no role in the decision to terminate his employment. Farr did not take part in the investigation of the allegations against Haynes.

### III.    Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers

6

to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt

7

as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### IV. Discussion.

The plaintiff contends that Wal-Mart discriminated against him on the basis of his race in violation of Title VII and Section 1981 when it terminated his employment. A plaintiff who alleges disparate treatment based upon race under Title VII must prove that the defendant acted with discriminatory purpose. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Likewise, Section 1981 requires proof of discriminatory intent. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n. 16 (1984). The plaintiff can create a rebuttable presumption of discriminatory intent by establishing a prima facie case. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th

8

Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). This may be done in three ways: (1) "by presenting direct evidence of discriminatory intent; [(2)] by meeting the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973); or [(3)] by demonstrating through statistics a pattern of discrimination." *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

### A.   **Direct Evidence and Statistical Evidence.**

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of discrimination." *Id.* at 582 (footnote omitted). A second means by which Johnson may establish a prima facie case is by presenting statistical evidence that demonstrates a pattern and practice of race discrimination on the part of Wal-Mart. *See Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (age discrimination case). The plaintiff has presented no direct evidence or statistical data; therefore, he must attempt to establish a prima facie case of discrimination through circumstantial evidence.

### B.   *McDonnell Douglas* **Test.**

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie

case of discrimination.[6] "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring an articulation of some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. *Id.* "'[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.'" *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant articulates a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "'[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment.'" *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original). The plaintiff may establish that the

---

[6] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas-Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

defendant intentionally discriminated against him "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.'" *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir.).

### 1. **Discriminatory Discharge Claim.**

The plaintiff contends that Wal-Mart discriminated against him on the basis of race when it terminated his employment. To establish a prima facie case of discriminatory discharge, Johnson must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position he held at Wal-Mart; (3) his employment was terminated despite his qualifications; and either (4) Wal-Mart replaced him with a person outside the protected class, *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995), or (4) after his termination, his position remained open and Wal-Mart continued to seek applicants of similar qualifications. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996). Johnson has failed to establish a prima facie case.

11

The plaintiff is a member of a protected class, his employment was terminated, and the defendant has made no allegations that he was unqualified for his position at Wal-Mart other than the sexually harassing conduct for which he was discharged. However, he has failed to proffer evidence that he was either replaced with a person outside the protected class or that his position remained open and Wal-Mart continued to seek applicants of similar qualifications. In fact, the undisputed facts demonstrate that Johnson was replaced by another black male. The plaintiff thus cannot make out a prima facie case of discriminatory discharge, and the claim will be dismissed.

### 2. Disparate Treatment Claim.

The plaintiff next asserts that Wal-Mart discriminated against him by disciplining him more harshly for committing sexual harassment than it did Kenneth Haynes, a white employee who was guilty of similar misconduct. In order to establish a prima facie case of such discrimination, Johnson must demonstrate that (1) he is a member of a protected class; and either (2) he did not violate a work rule; or (2) he engaged in misconduct similar to that of a person outside the protected class and (3) the disciplinary measures enforced against him were more severe than those enforced against the other persons engaged in similar misconduct. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). The plaintiff attempts to prove intentional discrimination by both of the above methods.

First, Johnson disputes that he sexually harassed Herbstreith as Wal-Mart contends. He therefore has established a prima facie case of disparate treatment. The burden thus shifts to the defendant to demonstrate it had a legitimate, nondiscriminatory reason for discharging the plaintiff. This Wal-Mart has done, for the undisputed facts establish that

Susan Farr believed her investigation into the incident conclusively revealed that the plaintiff had violated the company's policy against sexual harassment. "The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation." *Id.* Consequently, the burden returns to Johnson to demonstrate by a preponderance of the evidence that the defendant's proffered reason for discharging him is merely a pretext for discriminatory motive. He fails to meet his burden, however, for he has offered no evidence other than his own conclusory allegations to refute Wal-Mart's stated belief that Johnson had violated its policy prohibiting sexual harassment. He admits that Herbstreith complained to Wal-Mart management that he made comments of a sexual nature to her. He further admits that an eyewitness confirmed that he made the comments. When asked by an assistant manager to provide a statement of his version of the events, he refused to do so. Therefore, he has failed to demonstrate that Wal-Mart's proffered reason for discharging him was merely pretextual.

Alternatively, the plaintiff attempts to make out a prima facie case of disparate treatment by comparing the disciplinary measures the defendant took against him for allegedly violating the sexual harassment policy with the disciplinary measures the company took against Kenneth Haynes for purportedly violating the same policy. *See Jones*, 874 F.2d at 1540. To establish the requisite degree of similarity between himself and his comparator, Johnson must show that the white employee engaged in "'nearly identical' conduct" but was not terminated for such conduct. *See Nix v. WLCY Radio/Rahall*

13

*Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984). He has not presented any evidence, however, suggesting that Haynes violated the sexual harassment policy. The undisputed facts establish that Robinson's investigation of Haynes' alleged conduct revealed that Haynes' had not sexually harassed Nelson. Robinson learned from witnesses that the two joked about dating one another and that Nelson commented in the presence of another that she wanted to marry Haynes and have his children. No witness corroborated Nelson's allegations. Even she, when asked by Robinson, characterized Haynes' conduct as bothersome and not as threatening or harassing. The facts thus reveal that Wal-Mart did not perceive Haynes to be similarly situated to the plaintiff; therefore, the disparity in the company's treatment of its employees is not actionable. Moreover, "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones*, 874 F.2d at 1541. Susan Farr terminated the plaintiff's employment, while Robinson conducted the investigation leading to Wal-Mart's decision to abstain from disciplining Haynes. Farr played no role in the decision regarding Haynes, and Robinson had no part in the decision to discharge Johnson. Accordingly, the plaintiff's disparate treatment claim will be dismissed.

## V.     **Conclusion.**

The defendant's motion for summary judgment will be granted in full and all of the plaintiff's claims dismissed. Costs will be taxed in favor of the defendant and against the plaintiff. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __11th__ of June, 1997.

*[signature]*

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

15